IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| PENG JIANG,<br><br>Plaintiff,<br><br>vs.<br><br>UNITED STATES CITIZENSHIP AND IMMIGRATION SERVICES,<br><br>Defendant. | 4:25-CV-3240<br><br>MEMORANDUM AND ORDER |

The plaintiff challenges a United States Citizenship and Immigration Services (USCIS) Policy Manual for EB-1A immigrant visa petitions for those with "extraordinary ability," and the denial of the plaintiff's visa petition as arbitrary and capricious on the merits under the Administrative Procedure Act (APA). Filing 9. The portion of the Policy Manual challenged is colloquially referred to as the *Kazarian* policy. The defendant has filed a partial motion to dismiss Count II of the amended complaint (and Count I to the extent it challenges the *Kazarian* policy). Filing 10. The Court will grant the defendant's motion and dismiss Count II.

## FACTUAL BACKGROUND

The plaintiff, Peng Jiang, is an online marketing and digital platform specialist and citizen of the People's Republic of China who applied for an EB-1A visa on July 18, 2025, seeking classification as an alien of "extraordinary ability" under the Immigration and Nationality Act (INA). Filing 9 at 1, 3; 8 U.S.C. § 1153(b)(1)(A). On September 26, 2025, USCIS found the plaintiff satisfied the minimum amount of regulatory criteria to show he qualifies as an alien of "extraordinary ability," but denied the petition. Filing 9 at 2. On

November 20, 2025, the plaintiff filed his first complaint, alleging USCIS acted arbitrarily and capriciously and challenging the *Kazarian* policy. Filing 1 at 17-21. Thereafter, USCIS reopened proceedings, but, again, after further review, denied the plaintiff's petition on March 24, 2026, for an EB-1A visa. Filing 9 at 2. The plaintiff's operative amended complaint (filing 9) followed.

## STATUTORY AND REGULATORY BACKGROUND

The defendant's motion to dismiss challenges the plaintiff's claim that USCIS failed to comply with the APA in promulgating the *Kazarian* policy, contrary to the INA. Filing 10. The Court will assess each component—the APA, the INA, and the *Kazarian* policy—of this question of law in turn.

### 1. ADMINISTRATIVE PROCEDURE ACT

The APA provides the general procedures for various types of rulemaking that all agencies of the federal government, including USCIS, must follow. Todd Garvey, Cong. Rsch Serv., R41546, A Brief Overview of Rulemaking and Judicial Review (2017). 5 U.S.C. § 553 sets out the notice and comment requirements for agency rulemaking, the default rulemaking requirements, providing the public with notice and an opportunity to comment before it issues a final, legislative rule. However, Congress has carved out a number of exceptions to the notice and comment requirements for certain rules, depending on the substance or nature of the rule. A key exception is for nonlegislative rules, which are "interpretative rules, general statements of policy, or rules of agency organization, procedure, or practice." § 553(b)(A).

Whether an agency action is in effect a legislative rule that should have been subjected to notice and comment procedures, or an exception, depends on whether it substantively amends or adds to, versus simply interpreting, a preexisting rule that Congress or the agency itself previously created. *Iowa*

*League of Cities v. E.P.A.*, 711 F.3d 844, 873 (8th Cir. 2013). The critical distinction between legislative and interpretive rules is that while legislative rules impose new rights or duties, interpretive rules do not carry the force and effect of the law. *Id.* This means that interpretive rules merely state what the agency believes the statute or regulations mean and simply remind parties of their existing duties. *Id.* Expanding a regulation by imposing new requirements is a quintessential legislative rule. *Id.* Critically though, Congress did not intend for the exemptions to be interpreted broadly, and the notice and comment exemptions must be narrowly construed. *Id.*; *see also United States v. Picciotto*, 875 F.2d 345, 347 (D.C. Cir. 1989). This means that when an interpretive rule purports to create substantive requirements, it can be a legislative rule regardless of the agency's characterization. *South Dakota v. Ubbelholde*, 330 F.3d 1014, 1028 (8th Cir. 2003).

Judicial review of an administrative decision is governed by the APA and limited to whether an agency decision is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. 5 U.S.C. § 706(2)(A). An agency action may also be declared invalid if it is "without observance of procedure required by law[,]" like failing to follow notice and comment requirements for a legislative rule. § 706(2)(D). An agency's decision is accorded a high degree of deference. *Adventist Health Sys./SunBelt, Inc. v. U.S. Dep't of Health & Hum. Servs.*, 17 F.4th 793, 803 (8th Cir. 2021). An agency decision supportable on any rational basis must be upheld. *Voyageurs Nat. Park Ass'n v. Norton*, 381 F.3d 759, 763 (8th Cir. 2004). A decision is arbitrary and capricious if the agency decision relies on factors Congress has not intended it to consider, entirely fails to consider important aspects of the problem, offers an explanation for its decision that is counter to the evidence, or is so implausible that it could not be considered a difference of view or the

product of an agency's expertise. *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983) (*State Farm*); *McClung v. Paul*, 788 F.3d 822, 828 (8th Cir. 2015). This means that that the reviewing court must decide whether the agency's decision was based on consideration of the relevant factors and within the bounds of reasoned decision-making. *State Farm*, 463 U.S. at 43; *Russellville Legends LLC v. U.S. Army Corps of Eng'rs*, 24 F.4th 1192, 1196 (8th Cir. 2022).

### 2. IMMIGRATION AND NATIONALITY ACT

In 1990, Congress passed the INA, creating thousands of employment-based visas according to employment preferences to facilitate the immigration of highly talented workers. Pub. L. No. 101–649, 101 Stat. 4978. "Extraordinary ability" aliens are "priority workers" and have the first preference. § 1153(b)(1). Consequently, the "extraordinary ability" visa has been considered the most difficult type of employment visa to obtain. *See Joseph v. Dir. of Tex. Serv. Ctr., USCIS*, No. 24-40249, 2025 WL 458001, at *1 (5th Cir. Feb. 11, 2025). The statutory requirements for "aliens of extraordinary ability" are:

> (i) the alien has extraordinary ability in the sciences, arts, education, business, or athletics which has been demonstrated by sustained national or international acclaim and whose achievements have been recognized in the field through extensive documentation,
> (ii) the alien seeks to enter the United States to continue work in the area of extraordinary ability, and
> (iii) the alien's entry into the United States will substantially benefit prospectively the United States.

§ 1153(b)(1)(A). "Extraordinary ability" is further defined in the regulations as "a level of expertise indicating that the individual is one of that small percentage who have risen to the very top of the field of endeavor." § 204.5(h)(2).

The regulations also require the "extraordinary ability" visa to be an I-140 visa petition and "accompanied by evidence that the alien has sustained national or international acclaim and that his or her achievements have been recognized in the field of expertise." 8 C.F.R. § 204.5(h)(1) & (2). This "initial evidence," § 204.5(h), can be a one-time achievement of a major, international recognized award (such as an Olympic medal, Nobel Prize, or Pulitzer Prize), or at least three of the following:

> (i) Documentation of the alien's receipt of lesser nationally or internationally recognized prizes or awards for excellence in the field of endeavor;
> (ii) Documentation of the alien's membership in associations in the field for which classification is sought, which require outstanding achievements of their members, as judged by recognized national or international experts in their disciplines or fields;
> (iii) Published material about the alien in professional or major trade publications or other major media, relating to the alien's work in the field for which classification is sought. Such evidence shall include the title, date, and author of the material, and any necessary translation;

(iv) Evidence of the alien's participation, either individually or on a panel, as a judge of the work of others in the same or an allied field of specification for which classification is sought;

(v) Evidence of the alien's original scientific, scholarly, artistic, athletic, or business-related contributions of major significance in the field;

(vi) Evidence of the alien's authorship of scholarly articles in the field, in professional or major trade publications or other major media;

(vii) Evidence of the display of the alien's work in the field at artistic exhibitions or showcases;

(viii) Evidence that the alien has performed in a leading or critical role for organizations or establishments that have a distinguished reputation;

(ix) Evidence that the alien has commanded a high salary or other significantly high remuneration for services, in relation to others in the field; or

(x) Evidence of commercial successes in the performing arts, as shown by box office receipts or record, cassette, compact disk, or video sales.

§ 204.5(h)(3). However, if these ten standards are inapplicable to the petitioner's occupation, comparable evidence to establish eligibility is permitted. § 204.5(h)(3). And, lastly, unlike other visas, the "extraordinary

ability" classification does not require an offer for employment of labor certification from the Department of Labor. § 204.5(h)(4).[1]

3. *KAZARIAN* POLICY

Particularly at issue in this suit is USCIS's reliance on a Policy Memo to evaluate "extraordinary ability" visa petitions on top of the notice and comment rules codified in the C.F.R. U.S. Citizenship & Imm. Servs., Dep't of Homeland Sec., Subject: Evaluation of Evidence Submitted with Certain Form I-140 Petitions; Revisions to the *Adjudicator's Field Manual (AFM)* Chapter 22, *AFM* Update AD11-14, 2010 WL 5597716, at 1 (Policy Memo). Following a Ninth Circuit decision in 2010, USCIS created a two-step approach to adjudicate "extraordinary ability" visa applications under the INA. *Kazarian v. U.S. Citizenship & Immigration Servs.*, 596 F.3d 1115 (9th Cir. 2010). The Policy Memo clarified how "extraordinary ability" petitions should be assessed. *Amin v. Mayorkas*, 24 F.4th 383, 388 (5th Cir. 2022). The two-step process was created "to promote consistency in decision-making[,]" under the belief "that this approach will lead to decisions that more clearly explain how evidence was considered, the basis for the overall determination of eligibility (or lack thereof), and greater consistency in decisions on petitions for aliens with extraordinary ability." Policy Memo at 3.

---

[1] "Extraordinary ability" visas should not be confused with the "exceptional ability" visas that receive second priority and require proof of professional services sought by an employer in the United States. *See* § 1153(b)(2). Thus, the "extraordinary ability" visa has considerable advantages, as the petition is not dependent on an actual offer for employment in the United States and exempt from the time-consuming labor certification process, even though the "exceptional ability" visa requires a lesser showing of ability. *See* § 204.5(k); *see also* *Kazarian*, 596 F.3d at 1120.

The first step is for USCIS to "objectively evaluate each type of evidence submitted to determine if it meets the parameters applicable to that type of evidence described in the regulations (also referred to as 'regulatory criteria')." Policy Memo at 4. The defendant particularly points to the regulations use of "initial evidence" to describe this step of evaluating the petitioner's submission material to determine eligibility. § 204.5(g); Filing 11 at 8.

The second step is the Final Merits Determination (FMD), the key source of disagreement between the parties. The Policy Memo instructs USCIS during the FMD to "consider all of the evidence in totality in making the final merits determination regarding the required high level of expertise for the immigrant classification." Policy Memo at 4. The defendant describes the FMD as a determination of "whether the alien has demonstrated he or she is one of that small percentage who have risen to the very top of the field of endeavor, has sustained national or international acclaim, and that his or her achievements have been recognized in the field of expertise." Filing 11 at 8. Other courts have similarly described this step as an "inquiry of whether all the evidence shows 'extraordinary ability[,]'" or, "whether, as a whole, the evidence is sufficient to demonstrate that the applicant meets the 'required high level of expertise.'" *Krasniqi v. Dibbins*, 558 F. Supp. 3d 168, 176 (D.N.J. 2021) (citations omitted); *Amin*, 24 F.4th at 388 (citations omitted). This is what the plaintiff takes issue with, arguing the FMD is unlawful. Filing 9 at 21-23.

## STANDARD OF REVIEW

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable

for the misconduct alleged. *Id.* While the Court must accept as true all facts pleaded by the non-moving party and grant all reasonable inferences from the pleadings in favor of the non-moving party, *Gallagher v. City of Clayton*, 699 F.3d 1013, 1016 (8th Cir. 2012), a pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. *Iqbal*, 556 U.S. at 678. Determining whether a complaint states a plausible claim for relief will require the reviewing court to draw on its judicial experience and common sense. *Id.* at 679. The facts alleged must raise a reasonable expectation that discovery will reveal evidence to substantiate the necessary elements of the plaintiff's claim. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007).

## DISCUSSION

The plaintiff argues that the FMD of the *Kazarian* policy is contrary to the statutory and regulatory scheme, and that it was implemented without notice and comment. Filing 9 at 21-23. This challenge to the *Kazarian* policy has been repeatedly raised in this Court: *Biyani v. USCIS*, No. 4:22-CV-3032, 2022 WL 17326211 (D. Neb. Nov. 29, 2022) (Kopf, J.); *Etsy, Inc. v. Jaddou*, No. 4:22-CV-3022, 2023 WL 3689555 (D. Neb. May 25, 2023) (Buescher, J.); *Agrawal v. Miller*, No. 4:24-CV-3143, 2025 WL 2879217, at *22 (D. Neb. Sept. 12, 2025) (Buescher, J.); *Mukherji v. Miller*, 837 F. Supp. 3d 1022 (D. Neb. 2026) (Bataillon, J.); *Vernekar v. Miller*, No. 4:26-CV-3105, 2026 WL 2689561 (D. Neb. Sept. 8, 2026) (Rossiter, J.); *Sesham v. Miller*, No. 4:26-CV-3042, 2026 WL 3093359 (D. Neb. Sept. 14, 2026) (Buescher, J.); *Agarwal v. Miller et al.*, No. 4:26-CV-3049, 2026 WL 2884217 (D. Neb. Sept. 25, 2026) (Buescher, J.); *Rakhmatullin v. Miller*, No. 4:26-CV-3076, 2026 WL 3059603 (D. Neb. Sept. 29, 2026) (Buescher, J.). The plaintiff urges this Court to adopt *Mukherji* and

hold the *Kazarian* policy contrary to statutory and regulatory requirements and promulgated contrary to the APA. The Court, respectfully, disagrees.

### 1. STATUTORY AND REGULATORY REQUIREMENTS

The plaintiff argues neither the INA (§ 1153(b)(1)(A)) or the regulations (§ 204.5(h)(3)) authorize the FMD in the *Kazarian* policy. Filing 9 at 22. To begin, USCIS's interpretation of the INA is not entitled to deference. *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 394 (2024). Rather, courts review this kind of question of law de novo and "'exercise their independent judgment in deciding whether an agency has acted within its statutory authority, as the APA requires.'" *Iowa v. Wright*, 154 F.4th 918, 942 (8th Cir. 2025) (quoting *Loper Bright*, 603 U.S. at 412)).

In determining whether the INA authorizes USCIS's action, the Court begins "with the statute's plain language, giving words the meaning that proper grammar and usage would assign them." *Union Pac. R.R. v. Surface Transp. Bd.*, 113 F.4th 823, 833 (8th Cir. 2024). Thereafter, the statute should be interpreted "based on the traditional tools of statutory construction, not individual policy preferences." *Loper Bright*, 603 U.S. at 403. Recall that the INA requires USCIS to make immigrant visas available for "aliens with extraordinary ability . . . which has been demonstrated by sustained national or international acclaim and whose achievements have been recognized in the field through extensive documentation[.]" § 1153(b)(1)(A). Congress, as it often does, left the details to the agency to hammer out.

The regulations, as previously noted, define "extraordinary ability," require "initial evidence," and list ten criteria. § 204.5(g) & (h). The process for assessing "extraordinary ability" visa applications in accordance with the INA and accompanying regulations is explained in the Policy Memo. Policy Memo at 3-4. And again, the *Kazarian* policy is a two-step review process, and the

plaintiff challenges the second step, the Final Merits Determination (FMD), which analyzes overall "extraordinary ability." Policy Memo at 3-4.

The Court finds the FMD is consistent with the governing statute and regulation. The FMD speaks to the statute's requirement of "extraordinary ability which has been demonstrated by sustained national or international acclaim." § 1153(b)(1)(A); *Amin*, 24 F.4th at 392. As the Ninth Circuit explained, concerns about the significance of evidence should be raised in a subsequent "final merits determination" of whether the petitioner has the requisite "extraordinary ability," not "the antecedent procedural question of whether the petitioner has provided at least three types of evidence." *Kazarian*, 596 F.3d at 1121, citing § 204.5(h)(3); *see also* Policy Memo at 2.

The *Kazarian* policy mirrors the language of the regulation, defining "extraordinary ability" as "a level of expertise indicating that the individual is one of that small percentage who have risen to the very top of the field of endeavor[,]" and determining whether the actual merits of the petitioner's application show they have indeed risen to the very top of their field. § 204.5(h)(2). However, the plaintiff urges the Court to reject this assessment, reasoning that the legislative history of the INA does not support this interpretation because the House Conference Report did not mention the requirement that persons seeking an "extraordinary ability" visa be part of "that small percentage of individuals who have risen to the very top of their field" or something similar. *Mukherji*, 837 F.Supp.3d at 1032. Yet, the House Judiciary Committee Report "clearly states Congress's intent that the extraordinary-ability visa 'be reserved for that small percentage of individuals who have risen to the very top of their field of endeavor.'" *See Vernekar*, 2026 WL 2689561, at *5, quoting H. Comm. on the Judiciary, Family Unity and Employment Opportunity Immigration Act of 1990, H. Rep. No. 101-723(I), at

59 (2d. Sess. 1990), *reprinted in* 1990 U.S.C.C.A.N. 6710, 6739, 1990 WL 200418 at *6739. The "sustained national or international acclaim" formulation is not a "second, extra-regulatory test" that resulted in a change in existing policy because that standard was already codified in the regulations defining "extraordinary ability." Filing 9 at 21.

The plaintiff, however, alleges the FMD is a "post-satisfaction retesting of the petitioner's qualifications" that is impermissible as a second-step merits review beyond the enumerated evidentiary criteria in the regulations. Filing 22 at 9; Filing 9 at 22. However, there is no "presumption" of qualification if a petitioner meets the regulatory criteria in either the INA or regulations to grant automatic eligibility for an "extraordinary ability" visa "as a matter of regulatory right." Filing 9 at 21. The Court agrees with USCIS that "[b]ecause of the generalized nature of the categories of initial evidence, merely meeting three categories of documentation does not necessarily mean that the petitioner is at the very top of his field." Filing 11 at 16. The regulation labels the categories as "initial evidence" for "at least three" criteria. § 204.5(h). Like the Fifth Circuit found, this kind of wording "contemplates another step beyond submitting the enumerated evidence: if satisfying three criteria were enough, why would the agency invite proof of more?" *Amin*, 24 F.4th at 391. Consequently, the plaintiff's challenge to the FMD of the *Kazarian* policy as contrary to statutory and regulatory requirements fails.

2. COMPLIANCE WITH THE APA

Next, the plaintiff argues the *Kazarian* policy is a legislative rule that required notice and comment before adoption by USCIS to comply with the APA. Filing 9 at 21. In doing so, the plaintiff points to *Mukherji*, where the court found the adoption of the *Kazarian* policy without notice and comment rulemaking was in violation of the APA because the court found the *Kazarian*

policy was a legislative, rather than interpretive, rule that imposed substantive requirements on petitioners beyond what the statute or regulations required. *Mukherji*, 837 F. Supp. 3d at 1033. The plaintiff further argues the *Kazarian* policy was arbitrary and capricious under the APA and departed from prior practice in violation of *Encino Motorcars*. Filing 9 at 21; *Encino Motorcars, LLC v. Navarro*, 579 U.S. 211 (2016); *Mukherji*, 837 F. Supp. 3d at 1033.

In support of their argument, the plaintiff points to USCIS's characterization of the *Kazarian* policy as a substantive rule in prior rulemaking notices. Filing 9 at 21. For example, the Office of Personnel Management's (OPM) docket for the 1995 notice of proposed rulemaking (NPRM) characterized the notice as substantive. *Mukherji*, 837 F. Supp. 3d at 1031. The Court, however, agrees that "the two-step process was just one proposal—among several others—contained in that NPRM." *Vernekar*, 2026 WL 2689561, at *5, citing 60 F.R. 29771-01. Further, there was no independent assessment of whether, separate from USCIS's or OPM's characterization, the *Kazarian* policy as authored in the Policy Memo is a legislative or interpretive rule.

The Court finds the *Kazarian* policy is not a substantive rule and, therefore, not subject to notice and comment nor in violation of the APA's requirements.[2] The *Kazarian* policy simply interprets, rather than amends or adds to, the preexisting rules that Congress through the INA and USCIS through the accompanying regulations previously created to define "extraordinary ability." *See Iowa League of Cities*, 711 F.3d at 873. In this way,

[2] Since the Court finds USCIS did not violate the APA, the defendants' argument in the alternative that the plaintiff's procedural challenge is barred by the six-year statute of limitations under 28 U.S.C. § 2401(a) is not addressed. *See* filing 11 at 24-26.

the *Kazarian* policy states what USCIS (and the Ninth Circuit) believes the INA and regulations mean, reminding petitioners of their existing duties to qualify for an "extraordinary ability" visa, based on the ten criteria and overall ability, creating a uniform standard for the review process. *See id.* Many other courts have similarly found that the *Kazarian* policy does not impose new rights and duties and is therefore an interpretive rule under the APA. *See Branski v. Dir. of Tex. Serv. Ctr., USCIS*, No. 25-CV-1695, 2026 WL 2427439, at *10 (E.D. Wis. Aug. 19, 2026); *Taneja v. Miller*, No. 24-CV-05657, 2026 WL 1734266, at *7 (E.D.N.Y. June 16, 2026); *Nagaiah v. Allen*, 784 F. Supp. 3d 798, 817 (E.D. Pa. 2025); *Impossible Foods Inc. v. Jaddou*, No. 23-CV-02720, 2024 WL 235187, at *5 (N.D. Cal. Jan. 22, 2024); *Viswanadha v. Mayorkas*, 660 F. Supp. 3d 759, 771 (N.D. Ind. Mar. 8, 2023).[3]

Additionally, the plaintiff argues that USCIS changed its practice when it adopted the *Kazarian* policy, yet it failed to acknowledge or reason through the changes to its adjudicative policy, thereby acting arbitrarily and capriciously in violation of *Encino Motorcars*. *Mukherji*, 837 F. Supp. 3d at 1033; filing 9 at 6, 22. In *Encino Motorcars*, the Supreme Court required agencies to display an awareness that a position is changing and provide reasoned explanation for the new policy. 579 U.S. at 221. The explanation in the Policy Memo displays the required awareness of what clarifications were made to USCIS policy and the reasons given are satisfactory. Policy Memo at 2-3. The Court agrees that the Policy Memo explaining the *Kazarian* policy "more than adequately indicated USCIS's awareness of changes or at least

[3] Other courts have also found that USCIS policy manuals and memoranda generally set forth interpretive, rather than legislative, rules. *See, e.g.*, *Diaz v. USCIS*, 499 F. App'x 853, 855 (11th Cir. 2012) (per curiam); *Almakalani v. McAleenan*, 527 F. Supp. 3d 205, 221–22 (E.D.N.Y. 2021).

differences under the new policy[,]" and that the Policy Memo set out sufficient reasons for the changes in providing greater consistency and clarification to the process. *Agarwal*, 2026 WL 2884217, at *14-15. Similar to the reasoning for why the *Kazarian* policy is not a legislative rule, as explained above, the *Kazarian* policy does not violate the *Encino Motorcars* standard. USCIS's actions deploying the Policy Memo are within the bounds of reasoned decision-making. *See State Farm*, 463 U.S. at 43.

In sum, the *Kazarian* policy is an interpretive rule clarifying the sequence in which USCIS adjudicators evaluate evidence of "extraordinary ability." Consequently, the FMD that the plaintiff challenges is not “arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law[,]” § 706(2)(A), nor was it implemented “without observance of procedure required by law[.]” § 706(2)(D).

## CONCLUSION

For the reasons stated above, the Court will grant the defendant's motion to dismiss. Accordingly,

IT IS ORDERED:

1. The defendant's motion to dismiss (filing 10) is granted.

2. The plaintiff's second cause of action is dismissed.

3. This matter is referred to the Magistrate Judge for case progression.

Dated this 18th day of November, 2026.

BY THE COURT:

John M. Gerrard
Senior United States District Judge